Luis Santos, recurrente, *v.* La Comisión Industrial de Puerto Rico, etc., demandada, y El Administrador del Fondo del Seguro del Estado, Asegurador.

Núm. 215.—*Sometido:* Marzo 17, 1941. *Resuelto:* Marzo 20, 1941.

*Edelmiro Soldevila,* abogado del recurrente; *Hon. Procurador General George A. Malcolm, E. De Aldrey, Procurador General Auxiliar* y *Víctor J. Vidal González,* abogado éste del Fondo del Seguro del Estado, abogados del Administrador del Fondo.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El obrero recurrente, empleado de la Ochoa Fertilizer Corporation, recibió una herida mientras trabajaba para su patrono, y dos días después acudió al Administrador del Fondo del Seguro del Estado en solicitud de tratamiento médico para su lesión. Al día siguiente, uno de los médicos del asegurador le invitó a ir con él ante la Comisión Industrial, sin informarle con qué propósito le llevaba, y allí ante uno de los comisionados le imputó haber intervenido dolosamente con la lesión recibida con el fin de retardar su curación, pidiendo que se privase al obrero lesionado de toda compensación.

Se alega en la solicitud radicada ante esta corte, que ocho días más tarde la Comisión Industrial dictó una orden autorizando al Administrador del Fondo para privar al obrero de su compensación; que el recurrente solicitó la reconsideración de la orden, por no haber tenido su día en corte, y le fué denegada.

Los fundamentos del presente recurso, son:

1. Que la resolución recurrida fué dictada sin que se celebrara una vista pública, sin dar al obrero una oportunidad de defenderse y sin formularse una querella.

2. Que las imputaciones hechas por el médico acusador no fueron hechas bajo juramento.

3. Que la comisión no tuvo ante sí evidencia legal que justificara el fallo.

La resolución recurrida lee así:

"En el caso de epígrafe el Dr. A. M. Marchand, de la Administración del Fondo del Estado, compareció ante la Comisión Industrial el día 11 de septiembre de 1940, trayendo consigo al obrero Luis Santos a fin de que por la comisión pudiera observarse que el obrero había estado interviniéndose con su lesión a los fines de que de entenderlo así, la comisión autorizase que se le privase de su derecho a recibir compensación. El Dr. Marchand se expresó del modo siguiente:

" 'Sr. Comisionado, en este caso traemos al obrero Luis Santos, siendo el patrono Ochoa Fertilizer Corporation, quien se reportó a examen el día 10 de septiembre de 1940, alegando que mientras estaba vaciando un saco, un pedazo de sulfato de amoníaco que estaba en el saco, saltó y le dió en la espinilla del pie izquierdo, causándole una herida. Se trae al obrero ante esta Hon. Comisión Industrial por entenderse que el obrero presenta una lesión, con la cual ha intervenido dolosamente con el fin de retardar el proceso curativo; y, por tanto, debe privársele de todo derecho a compensación. La lesión, como se ve, tiene solamente tres días de ocurrida, y consiste en una úlcera de pulgada y media de diámetro, con la base completamente necrótica. Es imposible que un pedazo de sulfato de amoníaco haya saltado, precisamente, en ese mismo sitio, donde se supone que no haya habido ninguna otra herida anteriormente, y producir esa quemadura, especialmente en un sitio completamente

protegido por el pantalón.' Con la opinión del Dr. Marchand coincidió el Dr. Boneta.

"La Comisión Industrial, por lo tanto, resuelve autorizar al asegurador para que prive al obrero de su derecho a recibir compensación, sin privársele de aquella asistencia médica que necesite hasta su total curación.

"Comuníquese.

"San Juan, Puerto Rico, a Sept. 19, 1940."

De los autos originales que tenemos a la vista, aparece solamente que el día 11 de septiembre de 1940 comparecieron ante el Comisionado Sr. Herrero el obrero personalmente, el asegurador representado por su médico, estando presente el Dr. Boneta, asesor médico de la comisión; que el Dr. Marchand hizo las manifestaciones que aparecen transcritas en la resolución recurrida, supra; y que el Dr. Boneta dijo: "Coincido con esa opinión." No aparece en parte alguna del récord que al obrero lesionado se le diese una oportunidad para ser oído, ni siquiera que se le preguntase si admitía o negaba las imputaciones formuladas por el médico del Fondo del Seguro del Estado. Tampoco consta si la aprobación dada por el Dr. Boneta a la opinión emitida por su colega se basó en un examen personal de las lesiones o si se fundó en la hipótesis de que los hechos ocurrieron en la forma en que los relató el médico acusador. Fué tanta la festinación que hubo para resolver el caso, que al Dr. Boneta sólo se le dió tiempo para decir exactamente las cuatro palabras transcritas, que bastaron para privar al obrero de toda compensación.

Cuando un obrero sufre lesiones como consecuencia de un accidente ocurrido en el curso de su trabajo, adquiere el derecho a recibir tratamiento médico para su curación y la compensación que disponen las leyes vigentes. De ese derecho a compensación no se le puede privar sin el debido procedimiento de ley, cuyo elemento esencial e imprescindible es el derecho a ser oído, a confrontarse con los testigos que le acusan y a presentar el testimonio de los que le defienden.

El procedimiento incoado en contra del recurrente no era
estrictamente de naturaleza criminal, pero puede ser consi-
derado como cuasi criminal. Se le imputó la comisión de
un acto doloso, con la intención de defraudar al Fondo del
Estado; y se solicitó y se le impuso como castigo la pérdida
de toda compensación. Y se le condenó sin ser oído y tal
vez sin que se diera exacta cuenta de la naturaleza y de
las consecuencias del cargo que contra él se formulara.

Es cierto que el obrero recurrente estuvo presente mien-
tras el Dr. Marchand le acusaba ante el comisionado sen-
tenciador, pero ¿quién puede asegurar que el obrero lesionado
oyó y entendió la acusación, o que su grado de inteligencia
es suficiente para que pudiera darse cuenta de lo que sig-
nifica haber *intervenido dolosamente con el fin de retardar
el proceso curativo* y que la herida en su pierna tenía la *base
completamente necrótica,* si ni siquiera se le preguntó si tenía
algo que decir?

La manifestación que hizo el Comisionado Sr. Herrero en
la vista de la moción de reconsideración, de que "está jus-
tificada la rapidez de los procedimientos y es por la natura-
leza del cargo que se hace, porque si se tarda puede que se
pierdan los indicios," no es legalmente suficiente para sub-
sanar el error cometido al condenar al obrero recurrente sin
darle una oportunidad de ser oído en su defensa. El Fondo
del Seguro del Estado y la comisión no erraron al proceder
sumariamente a oír en presencia del obrero el testimonio
que tendía a establecer el hecho de que el obrero había inter-
venido dolosamente con la herida. Al hacerlo así, la comi-
sión no solamente perpetuaba el testimonio de los médicos
que examinaron al herido, si que también daba a los comi-
sionados una oportunidad de observar por sí mismos la
naturaleza e importancia de la herida y el estado de ésta
en el momento en que se acusaba al obrero de haber inter-
venido para retardar su curación. La comisión erró al fallar
el caso sin dar al obrero una oportunidad de ser oído en

su defensa; y erró nuevamente al negarse a reconsiderar su fallo.

*Procede, por tanto, la anulación de la resolución recurrida y la devolución del caso a la Comisión Industrial para la celebración de una nueva vista de acuerdo con los términos de esta opinión.*